UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES S. GILSDORF,

     Petitioner,

v.                                         Case No.  3:14cv167/MCR/CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

     Respondent.
_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 10).  Petitioner replied.  (Doc. 13).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in Okaloosa County Circuit Court Case No. 09-CF-2226, with capital sexual battery (victim less than 12 years of age, defendant over 18) (Count 1), lewd or lascivious molestation (Count 2) and protection of minors from obscenity (showing obscene material to a minor) (Count 3).  (Doc. 10, Ex. A, pp. 10, 50, 53).[1]  Petitioner went to trial.  (Exs. B-C).  The jury found petitioner guilty of a lesser included offense (battery) on Count 1, guilty of lewd or lascivious molestation as charged in Count 2, and guilty of protection of minors from obscenity as charged in Count 3.  (Ex. A, pp. 54-55).  By amended judgment filed July 19, 2011, petitioner was adjudicated guilty and sentenced to concurrent terms of one year imprisonment on Count 1, twenty-five years imprisonment on Count 2 followed by sex offender probation for life, and five years imprisonment on Count 3.  (Ex. A, pp. 95-101 (probation order), 107-116 (original judgment), 160-170 (amended judgment)).  The Florida First District Court of Appeal (First DCA) affirmed the judgment on April 19, 2012, per curiam and without a written opinion.  *Gilsdorf v. State*, 85 So. 3d 489 (Fla. 1st DCA 2012) (Table) (copy at Ex. I).

---

[1]All references to exhibits are to those provided at Doc.10, unless otherwise noted.  If a cited page has more than one page number, the court cites to the page number appearing at the bottom center of the page.

On February 11, 2013, petitioner filed a *pro se* motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. R).  The state circuit court dismissed the motion without prejudice as facially insufficient on February 20, 2013.  (Ex. S).

On June 17, 2013, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. N, pp. 1-14).  The motion was stricken as facially insufficient with leave to amend.  (*Id*., pp. 15-16).  Petitioner filed an amended motion on July 19, 2013.  (*Id*., pp. 17-34).  The state circuit court summarily denied relief without an evidentiary hearing.  (*Id*., pp. 43-79).  The First DCA affirmed, per curiam and without a written opinion.  *Gilsdorf v. State*, 136 So. 3d 596 (Fla. 1st DCA 2014) (Table) (copy at Ex. O).  Petitioner's motion for rehearing was denied April 28, 2014.  (Ex. Q).

On June 26, 2013, petitioner filed a *pro se* state habeas petition alleging ineffective assistance of appellate counsel.  (Ex. J).  The First DCA denied the petition on the merits on July 25, 2013.  *Gilsdorf v. State*, 119 So. 3d 485 (Fla. 1st DCA 2013) (Table) (copy at Ex. K).  Petitioners' motion for rehearing was denied on August 27, 2013.  (Ex. M).

Petitioner filed his federal habeas petition on April 2, 2014.  (Doc. 1).  The petition raises one claim of ineffective assistance of trial counsel (with three sub-claims), one claim of trial court error, and a claim of cumulative error.  Respondent asserts that petitioner's claims fail for one or more of the following reasons:  (1) the claim is procedurally defaulted; (2) the state court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 10).

## EVIDENCE PRESENTED AT TRIAL

Although petitioner does not raise a substantive claim that the evidence was insufficient to support his convictions, the undersigned relates the evidence presented at trial to provide context to his claims.  (Doc. 10, Ex. B).  Relevant to this summary is the fact that petitioner was convicted as charged of lewd or lascivious molestation and failing to protect a minor from obscenity; thus, the evidence presented at trial to support these charges is viewed in the light most favorable to the prosecution and with the presumption that the jury resolved all conflicting inferences in favor of the State and against petitioner.  *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  As to the sexual battery charge (petitioner's alleged penetration of the victim's anus with his finger), the jury's verdict of guilt of

the lesser included offense of battery reflects the jury's determination that the State proved beyond a reasonable doubt that petitioner intentionally touched B.A. against her will, but not that he penetrated her anus.

B.A., the victim, offered her testimony.  Petitioner was a friend of B.A.'s mother.  B.A. spent a lot of time at petitioner's house – swimming in his pool, playing with remote control helicopters and playing video games on petitioner's computer and the Wii gaming system.  B.A.'s parents were not with her when she was at petitioner's home – most of the time she was alone with petitioner, but sometimes her brother came with her.  Petitioner gave B.A. gifts.  B.A. testified that she got along with petitioner okay; that she "sometimes" liked spending time with him; but that she sometimes did not like spending time with him.  (Ex. B, p. 49).  B.A. explained there was a time she did not like spending time with petitioner because he "was doing weird things."  By "weird things", B.A. clarified:  "When I would be playing video games, he would touch me places I didn't like to be touched."  (Ex. B, p. 49).  When asked where those places were, B.A. stated that petitioner touched her with his hands in her "breast area" under her shirt.  (Ex. B, p. 50).  B.A. explained that petitioner's touching of her breast area occurred when she was playing the video game "Call of Duty".  B.A. testified:  "[M]e and my brother would play it [a different video called

Night of the Museum] but once we played Call of Duty he would tell my brother to

go to bed since he was afraid of that game and that's when stuff would happen."  (Ex.

B, pp. 54-55).  By "stuff", B.A. explained: "When he would be touching me in the

breast area." (Ex. B, p. 55).  When asked if petitioner did anything else that made her

not want to spend time with him, B.A. responded that the last time she saw petitioner,

she was getting ready to go to bed on his recliner and petitioner "went in my

underwear and touched by butt."[2]  (Ex. B, p. 51).  B.A. was wearing underwear and

petitioner's t-shirt at the time. (*Id*.).  After that incident, B.A. told her mother what

petitioner did to her.  (Ex. B, pp. 51-52).  B.A. testified that during her visits to

petitioner's home he also showed her (B.A.) an adult magazine containing pictures

of naked women and at least one DVD showing sexual intercourse.  (Ex. B, pp. 52-

54).  B.A. identified State's Exhibit 1, which is a drawing of a girl (front view) with

marks on it, specifically, each breast is circled and the genital area has an "X" across

it.  (Ex. A, p. 56).  B.A. testified that she made the marks on the drawing to show

"[w]here not to touch a girl."  (Ex. B, pp. 56-57).  When asked to identify what she

marked, B.A. identified the breasts she circled as "the breast area".  (Ex. B, p. 57).

---

[2]When asked to explain what she meant by that, B.A. testified that petitioner "put his finger inside my butt."  (Doc. 10, Ex. B, p. 51).  The jury ultimately decided, based on all the evidence presented at trial, that there was reasonable doubt petitioner penetrated B.A.'s anus, but there was no reasonable doubt petitioner touched her.

B.A. identified State's Exhibit 2, which is a drawing of a girl (back view) with the buttocks circled.  (Ex. A, p. 57).  B.A. testified that she circled the girl's buttocks to identify "where not to touch."  (Ex. B, p. 57).

Tracy Andrews, the victim's mother, also testified.   Ms. Andrews met petitioner at Alcoholics Anonymous approximately five years before.  Ms. Andrews' two youngest children, B.A. and C.A., enjoyed spending time at petitioner's house because he had games, remote control toys, a pool and a basketball court.  Ms. Andrews let her children spend the night with petitioner while she worked.  On July 12, 2009, B.A. was reluctant to go back to petitioner's house.  B.A. eventually told Ms. Andrews why she did not want to go back.  (Ex. B, pp. 70-79).

Tamara Hampton testified that she spent time with petitioner until she was nine years old because her aunt was married to him.  (Ex. B, pp. 89).  One summer, Ms. Hampton and her brother spent a week with their aunt and petitioner.  (Ex. B, p. 90). After that visit, Ms. Hampton never stayed with petitioner and her aunt again because of what petitioner did to her.  (Ex. B, p. 91).  Ms. Hampton testified that on a couple of occasions during that visit, petitioner put her on his lap, put his hand inside her shorts and touched her vagina.  This happened more than once, but Ms. Hampton was unsure how many times it occurred.  Ms. Hampton recalled that there was also at least

one night when she woke up to petitioner touching her vagina and stomach underneath her night gown, and yet another occasion when petitioner came into the bathroom while she was showering and watched her.  Ms. Hampton testified that, at the time, she told her parents only about the shower incident because she was too embarrassed to say the rest.  (Ex. B, p. 92).  When Ms. Hampton was about 14 years old, she told a friend about what happened with petitioner, but did not tell anyone else until an investigator asked her about it in 2009.  (Ex. B, p. 93).

Ralph Garrett, an investigator with the Okaloosa County Sheriff's Office, observed the child protection team interview of B.A.  Based on that interview, Garrett obtained and executed a search warrant for petitioner's residence.  Garrett found the video games B.A. described in the interview as well as the pornographic DVD she described and the obscene magazine she described.  (Ex. B, pp. 108-111).

After the State rested, defense counsel presented the testimony of petitioner, who denied ever touching B.A. inappropriately.  (Ex. B, p. 137).  Christopher Andrews, B.A.'s father, recounted that B.A. never told him petitioner put his finger in her butt.  (Ex. B, p. 153).  Jeremiah Dowdy, a deputy with the Okaloosa County Sheriff's Office, was the initial law enforcement officer who took Mr. Andrew's statement.  Deputy Dowdy knew Mr. Andrews because Andrews used to date

Dowdy's sister (Ashley Frost).  When Dowdy took Mr. Andrews' statement, B.A. and Tracy Andrews were present.  Deputy Dowdy asked B.A. a few questions and B.A. did not mention anything about penetration at that time.  (Ex. B, pp. 176-177). Deputy Dowdy was cross-examined and, on re-direct, clarified that in response to his questions, B.A. told him petitioner would have her sit on his lap and would put his hands underneath her panties, but B.A. said nothing about penetration.  (Ex. B, p. 179).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied"

the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The United States Supreme Court emphasized recently:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington*, supra, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was

incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

DISCUSSION

Ground One – Ineffective Assistance of Counsel

> Sub-claim 1          "Mr. Gilsdorf was denied effective assistance of counsel
> based on counsel's failure to file a proper motion for
> judgment of acquittal on count 2.  See *Jackson v. Virginia*,
> 443 U.S. 307 (1979)."  (Doc. 1, p. 6).

Petitioner acknowledges that trial counsel moved for a judgment of acquittal (JOA) on the sexual battery charge, but claims counsel was ineffective for failing to also move for a JOA on the lewd or lascivious molestation charge.  Petitioner argues there was a meritorious basis to move for a JOA, because the State merely presented evidence (the victim B.A.'s testimony) that he intentionally touched her chest area while she was playing the video game "Call of Duty", which was insufficient to show he touched the breast itself and that he acted with the requisite intent, namely, "a wicked, lustful, unchaste licentious, or sensual intent – or otherwise in a lewd and lascivious manner".  (Doc. 1, p. 7).  Petitioner argues that the State's evidence supported, at most, a conviction for *attempted* lewd or lascivious molestation.  (*Id.*, p. 7).

Petitioner also faults trial counsel for failing to move for a new trial after the jury's verdict, on the grounds that the prosecutor confused the evidence and misled the jury during closing argument when she stated that petitioner's inappropriate

touching of B.A.'s breast area occurred while she was sitting on petitioner's lap. Petitioner asserts B.A. never testified she sat on his lap, and that the prosecutor was confusing B.A.'s testimony with Tamara Hampton's testimony.  (Doc. 1, pp. 7-9).

The parties agree that petitioner exhausted this ineffective assistance claim by raising it in his Rule 3.850 proceeding.   (Doc. 1, pp. 16-17; Doc. 10, p. 16). Respondent argues petitioner is not entitled to federal habeas relief because the state court's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state court's decision based on an unreasonable determination of the facts.  (Doc. 10, pp. 16-20).

A.     Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *Id.*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S.

at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

B.      Section 2254(d) Review of State Courts' Decision

Petitioner raised this claim in his Rule 3.850 proceeding as Ground One of his amended postconviction motion. The state courts denied petitioner's claim on the merits. (Ex. N, pp. 45-47). The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the governing law. (Ex. N, p. 44). The court denied relief on this claim, explaining:

### MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 2

In Ground One, Defendant claims that counsel was ineffective for failing to move for judgment of acquittal on Count 2 (lewd or lascivious molestation). He alleges that the State presented no evidence that he intentionally touched B.R.A. in a lewd or lascivious manner. He also alleges that, had counsel moved for a judgment of acquittal, the motion would have been granted and Count 2 would have proceeded on the lesser-included offense of *attempted* lewd or lascivious molestation.

To prove the crime of lewd or lascivious molestation, the State must prove, among other things, that the defendant intentionally touched the victim's breasts, genitals, genital area, or buttocks or the clothing covering the victim's breasts, genitals genital area, or buttocks in a lewd or lascivious manner. *See* § 800.045(5), Fla. Stat.; Fla. Std. Jury Instr. (Crim.) 11.10(c). The terms "lewd" and "lascivious" are defined as meaning a "wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing an act." Fla. Std. Jury Instr. (Crim.) 11.10(c).

At trial, B.R.A. testified that, when she played video games, Defendant would put his hands under her shirt and touch her in the "breast area."FN6   Tracy Andrews, B.R.A.'s mother, testified that B.R.A. told her that Defendant fondled her under her shirt.FN7 Consequently, if counsel had moved for a judgment of acquittal on the lewd or lascivious molestation charge, then the motion would have been denied. The evidence was sufficient to present a question for the jury on whether Defendant intentionally touched B.R.A.'s breasts in a lewd or lascivious manner. Therefore, the Court concludes that Defendant cannot demonstrate prejudice on this claim and the claim should be denied with prejudice.

FN6 Exhibit B, Trial Transcript, p. 49-50, 54-55, 65-66.

FN7 Exhibit B, Trial Transcript, p. 82.

. . . .

## OBJECTION, CURATIVE INSTRUCTION, MOTION FOR MISTRIAL, OR MOTION FOR NEW TRIAL ON PROSECUTOR'S CLOSING ARGUMENT

In Grounds One and Two, Defendant also claims that counsel was ineffective for failing to object, request a curative instruction, move for mistrial, or move for new trial based on the prosecutor's comment during closing argument that Defendant would have B.R.A. sit in his lap.FN9 He alleges that the comment was a misstatement of the evidence and confused the jury regarding whether he had a lewd or lascivious intent to touch B.R.A. He does not, however, allege any specific prejudice with respect to this claim. As such, the Court finds that this claim is facially insufficient. Because Defendant has been given an opportunity to amend and his claim is still facially insufficient, further amendment will not be permitted and the Court concludes that the claim should be dismissed with prejudice. *See Oquendo*, 2 So. 3d at 1005-06.

FN9 Exhibit B, Trial Transcript, pp. 196-97.

(Ex. N, pp. 44-47 (*citing Oquendo v. State*, 2 So. 3d 1001 (Fla. 4th DCA 2008))).

The First DCA summarily affirmed. (Ex. O).

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard. Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations. *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)). The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's fact findings. 28 U.S.C. § 2254(e).

The state courts reasonably concluded that petitioner's attorney was not deficient for failing to move for a JOA on the lewd or lascivious molestation charge, because petitioner's proposed motion was without merit. *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). This court defers to the state court's determinations of state

law – the substantive elements of the offense and Florida's definition of "lewd or lascivious". The court has carefully reviewed B.A.'s trial testimony and the exhibits admitted through her testimony. (Ex. B, pp. 49-57). As described above, B.A. testified consistently that petitioner touched her under her shirt, in her "breast area". (Ex. B, pp. 49-51, 54-55, 65-66). B.A. identified State's Exhibit 1, which is a drawing of a girl with marks on it, specifically, each breast is circled and the genital area has an "X" across it. (Doc. 10, Ex. A, p. 56). B.A. testified that she made the marks on the drawing to show "[w]here not to touch a girl." (Ex. B, pp. 56-57). When asked to identify what she marked, B.A. identified the breasts she circled as "the breast area". (Ex. B, p. 57). In light of this evidence, the state courts reasonably determined that the State presented sufficient evidence that petitioner touched B.A.'s breasts to withstand a motion for JOA, and thus counsel's failure to move for a JOA on that basis was not ineffective.

The Florida courts also determined, reasonably, that the State presented legally sufficient evidence on the element of intent to withstand a motion for JOA. Petitioner does not dispute there was sufficient evidence that he intentionally (as opposed to accidentally) touched B.A. as she described. Rather, petitioner argues there was insufficient evidence his intent at the time was lewd or lascivious, because B.A.'s description of the circumstances surrounding his touching of her breasts was wholly

non-sexual – B.A. was merely playing the video game "Call of Duty".  Petitioner's argument rests on too narrow a view of the evidence.  The trial court would have considered all of the evidence presented at trial in ruling on petitioner's proposed motion for JOA.  *See State v. Brockman*, 827 So. 2d 299, 303 (Fla. 1st DCA 2002) ("In determining whether evidence is sufficient to withstand a motion for judgment of acquittal under Florida Rule of Criminal Procedure 3.380, the trial court . . . must consider *all* evidence adduced. . . ." (emphasis added)).  The evidence, as a whole, was legally adequate to present a question for the jury as to whether petitioner's intent was lewd or lascivious when he touched B.A.'s breasts.  *Cf. Method v. State*, 920 So. 2d 141, 144 (Fla. 4th DCA 2006) ("It was for the jury to decide, based on factual inferences, whether the defendant had a lewd or lascivious intent or whether the defendant's acts were merely signs of affection for the children.").  In light of all the evidence adduced, the Florida courts reasonably concluded that petitioner failed to establish his trial counsel was ineffective for failing to file a meritless motion for JOA.

As to counsel's failure to file a motion for new trial on the basis that the prosecutor confused the jury during closing argument when she told the jury B.A. testified she was sitting on petitioner's lap when he touched her breasts, the state courts concluded, reasonably, that petitioner failed to establish a reasonable

probability of a different result had counsel moved for a new trial. Petitioner's allegation of prejudice is purely speculative. Neither petitioner's allegations, nor the trial transcript, raises a reasonable probability the prosecutor's misstatement confused the jury, or that a motion for new trial based on the misstatement would have succeeded. This is especially true given the trial court's instructions that: (1) "Your verdict must be based solely on the evidence or lack of evidence, and the law." (Ex. B, pp. 26-27); (2) "What the lawyers say is not evidence and you are not to consider it as such." (Ex. B, p. 27); (3) "It is to the evidence introduced in this trial and to it alone that you are to look for that proof." (Ex. C, p. 226); and (4) "This case must be decided only upon the evidence you have heard from the testimony of the witnesses and have seen in the form of exhibits in evidence and these instructions." (Ex. C, p. 230). The jury is presumed to have followed the judge's instructions. *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions." (*citing Ingram v. Zant*, 26 F.3d 1047, 1053 (11th Cir. 1994))).

The state court's rejection of Sub-claim 1 was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief.

Sub-claim 2          "Mr. Gilsdorf was denied effective assistance of counsel in
                     that counsel failed to recognize the jury's confusion
                     relating to B.R.A.'s testimony and fail[ed] to present
                     argument in support of a read back of her testimony.  See
                     *Berger v. U.S.*, 295 U.S. 78 (1935)".   (Doc. 1, p. 9).

This claim arises from the jury's note: "Is it possible to playback or have read

the testimony of [B.A.]?"  (Doc. 10, Ex. A, p. 61).  The trial court asked the attorneys

how the court should respond, and both attorneys agreed that the jury should be

instructed that they must rely on their recollection of B.A.'s testimony.  (Ex. C, pp.

239-243).  Petitioner now claims counsel was ineffective for taking this position in

light of: (1) the prosecutor's misstating B.A.'s testimony in closing argument by

stating B.A. testified petitioner touched her breasts while she was sitting in his lap

(while also accurately stating B.A.'s testimony that petitioner came up behind her

while she was playing video games, put his hands up her shirt and touched her

breasts); and (2) the fact that the name of the video game B.A. was playing when

petitioner touched her breasts ("Call of Duty") was very similar to the name of the

pornographic movie petitioner had B.A. watch with him ("Duty Calls").  (Doc. 1, pp.

11-12).  Petitioner argues that the jury's request evidences its confusion about the

evidence supporting the lewd or lascivious molestation charge, and that counsel's

failure to insist that B.A.'s testimony be read back prejudiced him because:

There is a reasonable probability that the jury found that B.R.A. was watching a pornographic video by the name of "Duty Calls" (when in fact she was playing the video game "Call of Duty") while in Mr. Gildorf['s] lap (B.R.A. never testified she had ever sat in his lap) and that he touched her breast (she only testified concerning the chest *area*) to commit the charged offense in Count 2.

There is a reasonable probability that the jury was confused as to the facts they were required to accept or reject in that the pornographic movie and the video game have similar name[s], the State mislead [sic] the jury in closing arguments by confusing Ms. Hampton's testimony with B.R.A., and a read back would have clarified these facts.

(Doc. 1, pp. 12-13). Petitioner asserts he exhausted this claim by presenting it in his Rule 3.850 proceeding. (*Id.*, pp. 16-17).

Respondent asserts a procedural default defense, arguing that the state court's dismissal of the claim as facially insufficient was a rejection of the claim on state procedural grounds and not an adjudication on the merits. (Doc. 10, pp. 21-23). Respondent asserts petitioner does meet the cause and prejudice exception, because his ineffective assistance claim is not a substantial one. (*Id.*, pp. 23-38).

A.    Exhaustion and Procedural Default

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L. Ed. 2d 701

(2009) (*quoting Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L. Ed. 2d 640 (1991)).  The Supreme Court has "held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id*.  In *Judd v. Haley*, 250 F.3d 1308 (11th Cir. 2001), the Eleventh Circuit set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.  *Id*. at 1313. Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id*.  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id*.

Petitioner raised this claim in his Rule 3.850 proceeding as Ground Two of his amended postconviction motion.  The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by identifying and explaining the *Strickland* standard as the governing law.  (Doc. 10, Ex. N, p. 44).  The court disposed of this ground for relief as follows:

## JURY'S REQUEST FOR READ-BACK OF B.R.A.'S TESTIMONY

In Ground Two, Defendant claims that counsel was ineffective for objecting to the jury's request for a read-back of B.R.A.'s testimony. He alleges that the read-back was essential to assist the jury in the fact-finding determination. He also alleges that counsel's error contributed to or influenced the jury's finding of guilty on the lewd or lascivious molestation charge. The Court finds that this claim is facially insufficient as Defendant's allegation of prejudice is merely conclusory. *See Jones v. State*, 998 So. 2d 573, 584 (Fla. 2008). Because Defendant has been given an opportunity to amend and his claim is still facially insufficient, further amendment will not be permitted and the Court concludes that the claim should be dismissed with prejudice. *See Oquendo*, 2 So. 3d at 1005-06.

(Ex. N, p. 46) (footnote omitted). The First DCA summarily affirmed. (Ex. O).

The portion of *Jones* to which the state court cited provides:

While we conclude that trial counsel's performance was deficient, Jones has failed to prove prejudice. He offers nothing more than the blanket assertion that "[h]ad the evidence been presented, the result of the penalty proceedings would have been different." A mere conclusory allegation that the outcome would have been different is insufficient to state a claim of prejudice under *Strickland*; the defendant must demonstrate how, if counsel had acted otherwise, a reasonable probability exists that the outcome would have been different – that is, a probability sufficient to undermine confidence in the outcome. *See Holland v. State*, 916 So. 2d 750, 758 (Fla. 2005) (defendant's claim that "he was prejudiced because penalty phase counsel's deficiencies substantially impair confidence in the outcome of the proceedings is merely conclusory and must be rejected"); *Brown v. State*, 894 So. 2d 137, 160 (Fla. 2004); *Armstrong v. State*, 862 So. 2d 705, 712 (Fla. 2003) (finding that a mere conclusory allegation of prejudice was legally insufficient).

*Jones* at 584.  The *Jones* decision did not establish, or rely on, a state procedural rule.

Both the *Jones* decision and the state circuit court's determination in this case were

grounded in, or at least intertwined with, an interpretation of federal law – the

*Strickland* standard.  The state courts' rejection of petitioner's claim as insufficiently

pled was an adjudication on the merits and not a procedural bar ruling.

This conclusion is consistent with, and appears compelled by, the law of this

Circuit.  *See Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1285-86 (11th Cir.

2012) (holding that a Florida state court's dismissal of a postconviction claim for

facial insufficiency constitutes, at least for purposes of a procedural default analysis

for a federal habeas claim, a ruling on the merits that is not barred from federal

review).  The Eleventh Circuit in *Pope* explained:

> To begin, the State claims that we should reject Pope's failure-to-mitigate and failure-to-object claims outright because the state courts found them to be procedurally barred under Florida law.  We are unpersuaded.
>
> In determining how the state courts treated Pope's claims, we look to the Florida Supreme Court's denial of the claims, because it is "the last state court rendering a judgment in the case."  *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The Florida Supreme Court's decision is unilluminating, however, since it is not easy to discern whether the state court rejected Pope's claims under Florida Rule 3.850 because they were legally insufficient on their face, or because they were refuted by the record – what we typically think of as a "merits" ruling.  The Florida Supreme Court upheld the trial court's summary denial of all of Pope's penalty-phase ineffectiveness claims –

including both the failure-to-mitigate and the failure-to-object claims –
saying that '[w]e have reviewed the motions, files, and records in this
case and agree with the trial court that they conclusively demonstrate
that Pope is entitled to no relief in connection with the above claims.'
*Pope*, 569 So.2d at 1245.  If anything, the Florida Supreme Court's
statement that it had reviewed the case's files and records suggests that
it had rejected all of Pope's claims on the merits.  Moreover, the State's
brief before the Florida Supreme Court had argued that the claims were
both facially insufficient and refuted by the record.

But even assuming that the state court rejected Pope's claims on
facial insufficiency grounds, that does not mean that the state court
found Pope's claims to be procedurally barred.  We have recently held
that an Alabama state court's summary dismissal of a petitioner's
post-conviction claims – for failure to plead facts with sufficient
specificity – did not apply a procedural bar to dismiss the claims, which
were therefore subject to AEDPA review.  *Borden v. Allen*, 646 F.3d
785, 810-13 (11th Cir. 2011).  In so doing, we noted that "[t]he
dismissal of a claim pursuant to Federal Rule of Civil Procedure
12(b)(6), for example, unambiguously constitutes a ruling 'on the
merits.'" *Id*. at 812.  And similar to Federal Rule of Civil Procedure
8(a)(2), which requires "a short and plain statement of the claim
showing that [he] is entitled to relief," Florida Rule of Criminal
Procedure 3.850(c)(6) simply requires "a brief statement of the facts
(and other conditions) relied on in support of the motion."  Thus, just as
under our federal procedural rules, a Florida state court's dismissal of a
post-conviction claim for facial insufficiency constitutes – at least for
purposes of the procedural default analysis – a ruling "on the merits"
that is not barred from our review.  In short, whether the Florida
Supreme Court rejected the claims for facial insufficiency or only after
concluding that they were refuted by the record, the determination
would have been on the merits.

*Pope*, 680 F.3d at 1285-1286 (footnote omitted); *see Borden*, 646 F.3d at 812-16

(holding that Alabama courts' dismissal of petition for postconviction relief on

pleading grounds (because it was not pled with sufficient specificity as required by the relevant Alabama Rule of Criminal Procedure) necessarily entailed a determination of the merits of the underlying ineffective assistance claims and was not an imposition of a state procedural bar; the state courts, in disposing of the claims, "necessarily considered the sufficiency of such claims, focusing in on the factors for determining whether the petition presented a case sufficient to warrant relief under *Strickland*. . . .") (full *Strickland* citation omitted); *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1331 n.3 (noting, in concluding that state court's rejection of claim for failure to plead a claim under Alabama's criminal procedure rules, that: "We have also concluded that a dismissal for facial insufficiency under Florida's criminal procedure rules is a ruling on the merits." (*citing Pope, supra*)); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009) (rejecting State's procedural default argument; holding that Florida Supreme Court's rejection of petitioner's ineffective assistance claim as insufficiently pled because petitioner failed to identify any specific evidence in the record supporting it, constituted a ruling on the merits and was not a procedural bar ruling).

In short, the state courts' rejection of petitioner's claim is considered an adjudication on the merits subject to habeas review under § 2254(d).

B.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard outlined above.

C.     Section 2254(d) Review of State Courts' Decision

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard. The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's fact findings. 28 U.S.C. § 2254(e).

The court has carefully reviewed the trial transcript. The state courts reasonably determined that petitioner failed to establish prejudice, because his conclusions concerning prejudice are purely speculative and unsupported. The jury's question did not so much as hint at the reason for asking to review B.A.'s testimony, much less the charge for which it would be considered. Just as petitioner speculates that the question must have related to the jury's consideration of the lewd or lascivious molestation charge, one could just as easily speculate that the question related to consideration of the sexual battery charge, as there was significant cross-examination and re-direct of B.A.'s concerning her testimony that petitioner inserted his finger into her anus (including why she had reported it to some people but not others), and the jury ultimately found the charge was not proven beyond a reasonable

doubt.  Second, given B.A.'s unequivocal and consistent testimony (testimony that was internally consistent, consistent with what B.A. reported to others, and consistent with her deposition testimony) that petitioner put his hands up her shirt and touched her breasts while she was playing video games (Ex. B, pp. 49-66), it is very unlikely the jury's verdict on the lewd or lascivious molestation charge would have been different had B.A.'s testimony been read back.  Petitioner must show a substantial likelihood of a different verdict on Count 2 had B.A.'s testimony been read back, not just a conceivable one.  *Richter*, 131 S. Ct. at 792.

The state court's rejection of petitioner's claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Sub-Claim 2.

<table>
<tr><td>Sub-claim 3</td><td>"Mr. Gilsdorf was denied effective assistance of counsel based on counsel's failure to file a motion for new trial and/or timely object in that the jury was instructed on alternative theories of battery not charged in the information as a lesser included offense of capital sexual battery.  See <em>U.S. v. Gaudin</em>, 515 U.S. 506 (1995)".  (Doc. 1, p. 13).</td></tr>
</table>

This claim involves the jury instruction on battery as a lesser included offense of sexual battery.  The trial court instructed the jury as follows:

> To prove the crime of Battery, the State must prove the following element beyond a reasonable doubt:

1.     JAMES S GILSDORF intentionally touched or struck [B.A.] against her will, or

2.     JAMES S GILSDORF intentionally caused bodily harm to [B.A.].

(Doc. 10, Ex. A, p. 77).  Petitioner argues the trial court erred by including the second alternative theory – causing bodily harm – because the information did not allege he caused B.A. bodily harm, it alleged only that he penetrated her anus with his finger. Petitioner faults trial counsel for failing to object to the instruction (or file a motion for new trial after the jury found him guilty of battery).  (Doc. 1, pp. 14-16). Petitioner argues "[t]here is a reasonable probability the jury would have found him not guilty of battery but for the erroneous inclusion of the alternative theory of bodily harm."  (Doc. 1, p. 15).

The parties agree that petitioner exhausted this claim by raising it in his Rule 3.850 proceeding.  (Doc. 1, pp. 16-17; Doc. 10, p. 29).  Respondent argues petitioner is not entitled to federal habeas relief because the state court's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state court's decision based on an unreasonable determination of the facts.  (Doc. 10, pp. 29-31).

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

B.     Section 2254(d) Review of State Courts' Decision

Petitioner raised this claim in his Rule 3.850 proceeding as Ground Three of his amended postconviction motion.  The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the governing law.  (Doc. 10, Ex. N, p. 44). The court denied relief on this claim, explaining:

### OBJECTION OR MOTION FOR NEW TRIAL ON BATTERY INSTRUCTION FOR COUNT 1

In Ground Three, Defendant claims that counsel was ineffective for failing to object to and/or move for a new trial based on the jury instruction given for battery as a lesser-included offense of Count 1 (sexual battery upon a person less than 12 years of age).  The instruction provided:

To prove the crime of battery the state must prove the following element beyond a reasonable doubt:
[Defendant] intentionally touched or struck B.R.A. against her will; or [Defendant] intentionally caused bodily harm to B.R.A.

Defendant alleges that the instruction was improper because the State did not allege bodily harm in the amended information.  He also alleges that, but for the improper instruction, there is a reasonable probability that the jury would have found him not guilty of battery.

The instruction at issue is identical to the standard jury instruction for battery. *See* Fla. Std. Jury Instr. (Crim.) 11.1. Additionally, battery is a category one or necessarily lesser-included offense of sexual battery upon a person less than 12 years of age. *See id.* As such, the statutory elements of battery are *always* subsumed within those of sexual battery upon a person less than 12 years of age, and the State was not required to allege the necessary elements of battery in the amended information. *See generally Sanders v. State*, 944 So. 2d 203, 206 (Fla. 2006); *Wright v. State*, 983 So. 2d 6, 8 (Fla. 1st DCA 2007); *V.C. v. State*, 63 So. 3d 831, 833-34 (Fla. 3d DCA 2011). Consequently, if counsel had objected to the instruction or moved for a new trial, the objection would have been overruled and the motion denied. The Court therefore concludes that Defendant cannot demonstrate prejudice on this claim and the claim should be denied with prejudice.

(Ex. N, pp. 47-48) (footnote omitted). The First DCA summarily affirmed. (Ex. O).

The "contrary to" prong of the AEDPA standard is not implicated, because the state court utilized the *Strickland* standard. Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations. *Holsey*, 694 F.3d at 1257. The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's fact findings. 28 U.S.C. § 2254(e).

The state courts, in denying petitioner's motion for postconviction relief, analyzed whether the jury instruction was erroneous under state law and determined that the instruction was not erroneously given. Based on this determination that the

instruction was proper under state law, the state courts concluded that defense counsel was not deficient for failing to object to the instruction, and petitioner was not prejudiced by the alleged error.

Petitioner can succeed on this claim only if this court determines that the state courts' decision resulted in an unreasonable application of *Strickland*, but first this court would have to conclude that the state courts misinterpreted state law.   In *Herring v. Secretary*, 397 F.3d 1338 (11th Cir.2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir.2005), the Eleventh Circuit addressed similar issues.   In both cases, the petitioners claimed that their trial attorneys were ineffective, based on state law, for failing to object to certain evidence at trial.   *Herring*, 397 F.3d at 1354-55; *Callahan*, 427 F.3d 897, 932.   On direct appeal, the state courts rejected petitioners' claims based on state law.   *Herring*, 397 F.3d at 1354-55; *Callahan*, 427 F.3d 897, 932.   Both petitioners brought ineffective assistance of counsel claims in their federal habeas petitions, and the Eleventh Circuit rejected the claims, because they would have required the Eleventh Circuit to conclude the state appellate courts misinterpreted state law.   *Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and

federal habeas courts should not second-guess them on such matters.'"); *Callahan*, 427 F.3d 897, 932 ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Here, as in *Herring* and *Callahan*, the state courts have answered the question of what would have happened had petitioner's counsel objected to the jury instruction on battery – the trial court would have overruled the objection and allowed the instruction to remain as it was.  Thus, counsel's performance cannot be held ineffective in not objecting to the instruction.

Because petitioner has not shown that trial counsel's failure to object to the jury instruction was an error that no competent counsel would have made, or that if counsel had objected there is a reasonable probability the objection would have been sustained by the trial court, the state courts' decision denying petitioner's ineffective assistance claim was not unreasonable.  Petitioner is not entitled to federal habeas relief on Sub-claim 3.

Ground Two – Trial Court Error

Petitioner claims the trial court erred in admitting into evidence the testimony of Tamara Hampton under Section 90.404, Florida Statutes, otherwise known as *Williams'* Rule evidence.  (Doc. 1, pp. 18-21).  Ms. Hampton testified to petitioner's sexual molestation of herself years earlier.  Under Florida law, in a criminal case in which the defendant is charged with a crime involving child molestation, "evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."  Fla. Stat. § 90.404(2)(b) (2007).

The parties agree that petitioner exhausted this claim by presenting it as the sole issue in his direct appeal.  (Doc. 1, p. 22; Doc. 10, p. 32).  Respondent argues petitioner is not entitled to federal habeas relief because the evidence was admissible under Florida law, and petitioner offers no basis to conclude that the state courts' decision was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.  (Doc. 10, pp. 32-40).

Petitioner's claim raises a purely state law issue and does not involve a federal question.  Petitioner's claim is identical to the claim he raised in his counseled initial brief on direct appeal, which was based entirely on state law.  The only difference is

Case 3:14-cv-00167-MCR-CJK   Document 14   Filed 02/11/16   Page 39 of 45

Page 39 of 45

that here, petitioner adds a citation (without explanation) to *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001).  (Doc. 1, p. 18).  The relevance of *LeMay* is unclear, as that case involved a defendant's direct appeal of his federal conviction for child molestation under 18 U.S.C. §§ 2241 and 3231, and challenged the facial constitutionality of Federal Rule of Evidence 414 which permits the admission of evidence of similar crimes in child molestation cases.

Petitioner's Ground Two here does not mount a facial challenge to the constitutionality of Fla. Stat. § 90.404(2)(b) on due process grounds; rather, petitioner challenges the state court's application of the statute in light of state court decisions interpreting and applying it.  Petitioner claims the trial court abused its discretion and failed to meet the requirements of Florida law when it admitted Hampton's testimony under § 90.404, because: (1) the trial court considered Ms. Hampton's deposition testimony when determining whether to allow Hampton to testify at trial, which was an abuse of discretion; (2) the trial court found that petitioner's previous acts of child molestation against Ms. Hampton were established by "clear and convincing evidence" – the standard required by Florida law – which was erroneous and an abuse of discretion; (3) the trial court admitted Ms. Hampton's testimony even though the acts alleged by Hampton did not meet the requirements for admissibility set forth in *McLean v. State*, 934 So. 2d 1248 (Fla. 2006), which was error; and (4) the trial court

admitted Ms. Hampton's testimony even though the probative value of Hampton's testimony was substantially outweighed by the danger of unfair prejudice, in violation of Fla. Stat. § 90.403.  (Doc. 1, pp. 18-21; Doc. 10, pp. 16-18).  Neither petitioner's habeas petition, nor his reply adequately presents a claim that the admission of Ms. Hampton's testimony violated the Constitution, Supreme Court precedent, or any federal right.  Similarly, when petitioner raised this claim in his state direct appeal, the parties' arguments relied exclusively on Florida statutory and decisional law. (Doc. 10, Ex. F (petitioner's initial brief); Ex. G (State's answer brief)).  Because petitioner's claim is wholly grounded in the state courts' interpretation of Florida law, Ground Two is not cognizable on federal habeas review.  *See Holsey v. Thompson*, 462 F. App'x 915, 917 (11th Cir. 2012) (holding that habeas petitioner's claims raised issues of pure state law and were not cognizable under federal habeas review, where petitioner claimed the state appellate court erred in concluding that the trial court's erroneous evidentiary ruling and jury instruction were harmless).

Even if this court were to construe petitioner's habeas petition as asserting a federal due process challenge to the admission of Ms. Hampton's testimony (based on his citation to *LeMay*), and even further assuming to petitioner's benefit that he properly exhausted the federal claim by presenting it in his direct appeal, petitioner still would not be entitled to federal habeas relief, because no decision of the United

States Supreme Court suggests that admitting the other-act evidence in this case was unconstitutional.  *See, e.g., Lee v. Buss*, 3:09cv83/RV/EMT, 2011 WL 2784598, at *10-*11 (N.D. Fla. June 28, 2011), *Report and Recommendation adopted*, 2011 WL 2746320 (N.D. Fla. July 14, 2011) (denying habeas relief on same basis, where petitioner challenged state court's admission of similar-act evidence); *Aquino v. McNeil*, No. 4:06cv318/SPM/EMT, 2009 WL 2495762, at *1 (N.D. Fla. Aug.10, 2009) (denying habeas relief on same basis, where petitioner convicted of sexual battery on a child under twelve years of age challenged state court's admission of evidence that petitioner committed prior sexual acts on two other children); *Quintero v. McNeil*, No. 4:08cv318/RH/MD, 2009 WL 1833872, at *1 (N.D. Fla. June 23, 2009) (denying habeas relief on same basis, where petitioner convicted of sexual battery on a child challenged state court's admission of evidence that petitioner committed repeated sexual batteries years earlier on another child victim).

Petitioner's Ground Two provides no basis for federal habeas relief.

Ground Three - Cumulative Error

Petitioner's final claim is that this court should grant habeas relief, even if it concludes that none of his claims individually warrant such relief, based on "the cumulative impact" of the alleged errors and omissions raised above.  (Doc. 1, p. 22). The Eleventh Circuit has rejected such "cumulative error" claims.  *See Insignares v.*

*Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273 (11th Cir. 2014).  As the court in *Insignares*

explained:

> Insignares claims cumulative error deprived him of a fair trial.
> Under the cumulative-error doctrine, a sufficient agglomeration of
> otherwise harmless or nonreversible errors can warrant reversal if their
> aggregate effect is to deprive the defendant of a fair trial.  *Morris v.
> Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).  "This
> court has made clear that where '[t]here [is] no error in any of the [trial]
> court's rulings, the argument that cumulative trial error requires that this
> Court reverse [the defendant's] convictions is without merit.'"  *Id.*
> (*quoting United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005)
> (per curiam)) (alterations in original).  Because we have found no error
> in the issues on appeal, Insignares has failed to show that the state judge
> lacked a reasonable basis to deny his cumulative-error claim.

*Id*. at 1284.

Because this court has found no federal constitutional error in the issues raised

in Grounds One and Two, petitioner's argument that "the cumulative effect of the

errors and omissions as outlined above" warrants federal habeas relief is without

merit.  The petition should be denied.

## REQUEST FOR AN EVIDENTIARY HEARING

Petitioner's reply requests an evidentiary hearing.  (Doc. 13).  "If a claim has

been adjudicated on the merits by a state court, a federal habeas petitioner must

overcome the limitation of § 2254(d)(1) on the record that was before that state

court."  *Pinholster*, 563 U.S. at 185.  If petitioner does not overcome § 2254(d)(1),

federal habeas relief should be denied and, correspondingly, he is not entitled to an evidentiary hearing. *Pinholster*, 563 U.S. at 183; *see also Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (noting that when the state-court record "precludes habeas relief" under the limitations of § 2254(d), a district court is "not required to hold an evidentiary hearing."). As petitioner has not overcome § 2254(d)(1) as to any of his claims, he is not entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning

of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. James Sherman Gilsdorf*, Okaloosa County Circuit Court Case No. 09-CF-2226, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 11th day of February, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.